**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| FRANK GARRIDO, on behalf of himself and others similarly situated, | : : | No. |
| Plaintiffs, | : : : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| SMARTMATCH INSURANCE AGENCY, LLC and ASSURE MEDIA, LLC | : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : | |

Plaintiff Frank Garrido, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.      This case involves a campaign by Smartmatch Insurance Agency, LLC ("Smartmatch") to market its services through the use of pre-recorded telemarketing calls,

including to numbers on the National Do Not Call Registry, in plain violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (hereinafter referred to as the "TCPA").

3.      These calls were made by Assure Media, or its vendors, who makes pre-recorded

calls for its customers, such as Smartmatch.

4.      Because the calls to Plaintiff were transmitted using technology capable of

generating thousands of similar calls per day, Plaintiff brings this action on behalf of proposed

nationwide classes of other persons who were sent the same illegal telemarketing calls.

5.      A class action is the best means of obtaining redress for the Defendants' illegal

telemarketing and is consistent both with the private right of action afforded by the TCPA and

the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

6.      Plaintiff is, and at all times mentioned herein was, an individual citizen of Florida.

7.      Defendant Assure Media, LLC is a Florida limited liability company

headquartered in Boca Raton, Florida, in this District.

8.      Defendant Smartmatch Insurance Agency, LLC is a Missouri corporation that is

registered to do business in Florida.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47

U.S.C. § 227 *et seq*.

10.     This Court has personal jurisdiction over Assure Media and Smartmatch because

the company resides in this District and is registered to do business in this District. Smartmatch

offers insurance products to consumers in this District through solicitation calls made from and into this District.

11.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) because the telephone calls at issue were sent from this District and Defendant Assure Media resides here.

## **TCPA BACKGROUND**

The TCPA Prohibits Automated Telemarketing Calls

12.     The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B).  *See* 47 U.S.C. § 227(b)(3).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do Not Call Registry

16.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

17.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

18.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## **FACTUAL ALLEGATIONS**

19.     Defendant Smartmatch is a "person" as the term is defined by 47 U.S.C. § 153(39).

20.     Defendant Assure Media is a "person" as the term is defined by 47 U.S.C. § 153(39).

21.     Plaintiff Garrido's cellular telephone number, (813) 625-XXXX, is registered on the National Do Not Call Registry and has been since June 1, 2021.

22.     Plaintiff Garrido received pre-recorded telemarketing calls from the Defendant Assure Media, or a vendor acting at their direction, promoting Smartmatch Insurance on June 8 and 15, 2021 to his number (813) 625-XXXX.

23.     The Plaintiff also believes he got pre-recorded calls from Assure Media on June 1, 4, 8, 15 as well as July 23 and 26, 2021.

24.     The pre-recorded message stated that the purpose of the call was to find the Plaintiff health insurance.

25.     After the pre-recorded portion of the June 8, 2021 call, the Plaintiff was ultimately transferred to a live agent "Steve Jones" who stated that he was with Smartmatch.

26.     During this call, the Plaintiff was informed that he could save money on his co-payments for drug prescriptions if he signed up.

27.     After the pre-recorded portion of the June 15, 2021 call, the Plaintiff was ultimately transferred to Smartmatch again.

28.     During this call, the Plaintiff was again informed that he could save money on his co-payments for drug prescriptions if he signed up for their services.

29.     Plaintiff did not provide his prior express written consent to receive the telemarketing call at issue.

30.     The calls were not necessitated by an emergency.

31.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and,

5

in some instances, they were charged for incoming calls. Plaintiff and the Class Members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

### SMARTMATCH IS LIABLE FOR THE CALLING CONDUCT OF ASSURE MEDIA

32.     The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

33.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

34.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

35.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Smartmatch may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

36.     The May 2013 FCC Ruling further clarifies the circumstances under which a

telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the
> outside sales entity access to information and systems that normally would be
> within the seller's exclusive control, including: access to detailed information
> regarding the nature and pricing of the seller's products and services or to the
> seller's customer information. The ability by the outside sales entity to enter
> consumer information into the seller's sales or customer systems, as well as the
> authority to use the seller's trade name, trademark and service mark may also be
> relevant. It may also be persuasive that the seller approved, wrote or reviewed the
> outside entity's telemarketing scripts.  Finally, a seller would be responsible under
> the TCPA for the unauthorized conduct of a third-party telemarketer that is
> otherwise authorized to market on the seller's behalf if the seller knew (or
> reasonably should have known) that the telemarketer was violating the TCPA on
> the seller's behalf and the seller failed to take effective steps within its power to
> force the telemarketer to cease that conduct.

28  CC Rcd at 6592 (¶ 46).

37.     Smartmatch knowingly and actively accepted business that originated through the

illegal telemarketing calls from Assure Media.

38.     Smartmatch had the ability to identify the fact that Assure Media was calling

individuals using pre-recorded messages.

39.     Moreover, Smartmatch maintained interim control over the actions of the party

that made the call.

40.     Smartmatch gave interim instructions to Assure Media by providing (a)

information regarding the type of candidates they could call, including the geographic region

they were in, and (b) the script that Assure Media would have to use that would result in a

transfer to Smartmatch.

41.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

43.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **Robocall Class:** All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendants (or an agent acting on behalf of Defendants) placed a telemarketing call (3) within the four years prior to the filing of the Complaint and through trial (4) using an identical or substantially similar pre-recorded message used to place a telephone call to Plaintiff.

44.     Plaintiff is a member of and will fairly and adequately represent and protect the interests of this class as he has no interests that conflict with any of the class members.

45.     Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

46.     Plaintiff and all members of the Class have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time,

the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

47.     This Class Action Complaint seeks injunctive relief and money damages.

48.     The Class as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

49.     Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

50.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

51.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

52.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

53.     There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

(a) Whether Smartmatch is vicariously liable for Assure Media's conduct;

(b) Whether the Defendants used pre-recorded message to send telemarketing calls;

(c) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

(d) whether Defendants' conduct constitutes a violation of the TCPA; and

(e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

54.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interests which are antagonistic to any member of the Class.

55.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

56.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

57.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

58.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act
(47 U.S.C. 227(b)) on behalf of the Robocall Class**

59.     Plaintiff incorporates the allegations from paragraphs 1-58 as if fully set forth herein.

60.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the

cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

61.    As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

62.    If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

63.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, using a pre-record message in the future;

B.      That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.      Such other relief as the Court deems just and proper.

### **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Respectfully Submitted,

**Plaintiff Garrido**, individually and on behalf of those similarly situated individuals

Dated: September 10, 2021              */s/ Avi Kaufman*
                                       Avi R. Kaufman (FL Bar no. 84382)
                                       kaufman@kaufmanpa.com
                                       Rachel E. Kaufman (FL Bar no. 87406)
                                       rachel@kaufmanpa.com
                                       KAUFMAN P.A.
                                       400 NW 26th Street
                                       Miami, FL 33127
                                       Telephone: (305) 469-5881

                                       *Counsel for Plaintiff and the putative class*